1

2

3

4

5

6

7

8                        **UNITED STATES DISTRICT COURT**

9                       **EASTERN DISTRICT OF CALIFORNIA**

10

11   PAMELA MCKENZIE,                          )   Case No.: 1:20-cv-0327 JLT
                                               )
12              Plaintiff,                      )   ORDER GRANTING PLAINTIFF'S REQUEST
                                               )   FOR JUDICIAL REVIEW (DOC. 19) AND
13        v.                                   )   REMANDING THE ACTION PURSUANT TO
                                               )   SENTENCE FOUR OF 42 U.S.C. § 405(g)
14   KILOLO KIJAKAZI[1]                         )
     Acting Commissioner of Social Security,   )   ORDER DIRECTING ENTRY OF JUDGMENT IN
15                                             )   FAVOR OF PAMELA MCKENZIE, AND
                Defendant.                      )   AGAINST DEFENDANT, KILOLO KIJAKAZI,
16                                             )   ACTING COMMISSIONER OF SOCIAL
                                               )   SECURITY
17   _____)

18        Pamela McKenzie asserts she is entitled to supplemental security income under Title XVI of

19   the Social Security Act.  Plaintiff argues the administrative law judge was erred in evaluating the

20   record and the decision lacks the support of substantial evidence.  (*See generally* Doc. 19.)  For the

21   reasons set forth below, the matter is **REMANDED** for further proceedings pursuant to sentence four

22   of 42 U.S.C. § 405(g).

23                              **BACKGROUND**

24        In May 2015, Plaintiff filed an application for benefits, alleging she came disabled in January

25   2015 due to bipolar disorder, post-traumatic stress disorder, legal blindness in her right eye, chronic

26   

27        [1] The action was originally filed against Andrew M. Saul in his capacity as the Commissioner of Social Security.
     (*See* Doc. 1 at 1.)  The Court has substituted Kilolo Kijakazi, who has since been appointed the Acing Commissioner of
28   Social Security, as the defendant.  *See* Fed. R. Civ. P. 25(d).

                                         1

obstructive pulmonary disease, and high blood pressure.  (Doc. 13-2 at 67.)  The Social Security Administration denied the application at the initial level and upon reconsideration.  (*See id.* at 67-96, 102-108.)  Plaintiff requested an administrative hearing on the application and testified before an ALJ on December 6, 2018.  (*See* Doc. 13-2 at 25, 109-110.)  The ALJ found Plaintiff was not disabled and issued an order denying benefits on January 16, 2019.  (*Id.* at 25-34.)  Plaintiff requested review of the decision by the Appeals Council, which denied the request on September 24, 2019.  (*Id.* at 11-13.)  Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

1  42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v.*

2  *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability,

3  the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

4  gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

5  ## ADMINISTRATIVE DETERMINATION

6  To achieve uniform decisions, the Commissioner established a sequential five-step process for

7  evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The process

8  requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had

9  medically determinable severe impairments (3) that met or equaled one of the listed impairments set

10  forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional

11  capacity to perform to past relevant work or (5) the ability to perform other work existing in significant

12  numbers at the state and national level.  *Id.* The ALJ must consider testimonial and objective medical

13  evidence. 20 C.F.R. §§ 404.1527, 416.927.

14  Pursuant to this five-step process, the ALJ determined Plaintiff did not engage in substantial

15  gainful activity after the amended alleged onset date of May 22, 2015.  (Doc. 13-2 at 27.)  Second, the

16  ALJ found "[t]he claimant has the following severe impairments: chronic obstructive pulmonary

17  disease (COPD), vision impairment, generalized anxiety disorder, and bipolar disorder."  (*Id*.)

18  However, the ALJ also indicated Plaintiff's "medically determinable mental impairment of generalized

19  anxiety disorder and bipolar disorder does not cause more than minimal limitation in the claimant's

20  ability to perform basic mental work activities and is therefore nonsevere."  (*Id.* at 28.)  At step three,

21  the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing.  (*Id.* at 29.)

22  Next, the ALJ found:

23  > [T]he claimant has the residual functional capacity to perform medium work as
> defined in 20 CFR 416.967(c) except she is limited to no work involving depth
24  > perception, must avoid extreme cold and extreme heat, must avoid concentrated
> exposure to fumes, odors, dusts, gases, poor ventilation and pulmonary irritants and
25  > any high volatility cleaning agents, but low volatility is ok.

26  (*Id.*)  With this residual functional capacity, the ALJ determined at step four that Plaintiff was

27  "capable of performing past relevant work as a cashier, housekeeping, and retail clerk."  (*Id.* at 32.)  In

28  the alternative, the ALJ determined at step five that Plaintiff could perform "other jobs that exist in

1   significant numbers in the national economy." (*Id.* at 33.)  Thus, the ALJ concluded Plaintiff was not

2   disabled as defined by the Social Security Act since May 22, 2015.  (*Id.* at 34.)

## DISCUSSION AND ANALYSIS

Plaintiff argues the ALJ erred at step two in evaluating the severity of her mental impairments

and addressing these impairments in other steps of the sequential evaluation.  (Doc. 19 at 5, 14-21.)  In

addition, Plaintiff asserts the residual functional capacity identified by the ALJ is not supported by

substantial evidence in the record, because the ALJ did not account for all her limitations in the RFC.

(*Id.* at 21-27.)  Finally, Plaintiff contends the ALJ failed "to acknowledge, discuss or weigh third-party

witness statements." (*Id.* at 27.)  On the other hand, the Commissioner asserts the "final decision was

supported by substantial evidence and free of reversible legal error." (Doc. 21 at 23.)

### A.   Plaintiff's Subjective Statements

#### 1.   Function report

On July 11, 2015, Plaintiff submitted a function report to the Social Security Administration

with her application for benefits.  (Doc. 13-2 at 3, 298-307.)  Plaintiff indicated her ability to work was

limited by shortness of breath, anxiety attacks, bipolar disorder, post-traumatic stress syndrome, and

blindness in her right eye.  (*Id.* at 299.)  She noted that she did not have difficulties with personal care,

did not need reminders to groom, and could prepare her own meals.  (*Id.* at 300-01.)  Plaintiff stated she

performed light cleaning and laundry but did not do any outdoor chores.  (*Id.* at 301.)  She estimated

that she could walk a block without needing to rest and needed to rest about "5 to 10 minutes" before

resuming walking.  (*Id.* at 304.)  She stated she attended church and could go shopping in stores for

food, clothes, and whatever was "need[ed] at the time." (*Id.* at 302-303.)  In addition, Plaintiff reported

her hobbies included reading and watching television.  (*Id.* at 303.)

Plaintiff noted she could "get overwhelmed with people and have anxiety attacks" due to being

around people.  (Doc. 13-2. at 304.)  She indicated that she did not handle stress well, and her ability to

handle changes "depend[ed] on the routine." (*Id.* at 305.)  Plaintiff estimated she could pay attention

for five to seven minutes at one time; but she was able to finish tasks that she started, such as a

conversation, chores, reading, and watching a movie.  (*Id.* at 304.)

///

4

2.      Hearing testimony

On December 6, 2018, Plaintiff testified at an administrative hearing.  (Doc. 10-3 at 32.)  She reported that she was fifty-four years old, and she had a ninth-grade education.  (*Id.* at 47.)  Plaintiff said she last worked in 2006 as a cashier, in a part-time position for J.C. Penny.  (*Id.*)  She stated her work history also included cleaning houses for a few months.  (*Id.* at 48.)

She reported she suffered from depression, anxiety, COPD, and pain in both legs.  (Doc. 13-2 at 49.)  Plaintiff testified that she smoked but had cut back from "[a] pack and a half" per day to "[h]alf a pack."  (*Id.*)  Plaintiff said she had shortness of breath with panic attacks and anxiety.  (*Id.* at 52.)  In addition, she said exertion could cause shortness of breath, and she had to stop what she was doing to "take a break," which happened three or four times each week.  (*Id.* at 49-50.)  For example, Plaintiff stated she could vacuum for "about four or five minutes" before she needed to take a break "to catch [her] breath."  (*Id.* at 52-53.)  She explained she would use an inhaler, take a break, and then "go back a little bit later and finish what [she] was doing."  (*Id.* at 53.)  Plaintiff testified that she had two inhalers, and used both, as well as a nebulizer" that she used "once a day" if she was having "a really hard time breathing."  (*Id.* at 50-51.)

Plaintiff said she had to go to the emergency room for difficulty breathing in 2016, and she had to be given oxygen.  (Doc. 13-2 at 51.)  She stated that when she got to the hospital, she "only had 60 percent oxygen in [her] body."  (*Id.*)  Plaintiff reported she was kept overnight, until her oxygen level went back up, and she was prescribed prednisone for ten days.  (*Id.* at 51-52.)  In addition, she was directed to seek pulmonary care.  (*Id.* at 51.)

She testified that she continued to have anxiety, for which she had been prescribed Alprazolam, but reported her psychiatrist "stopped giving it to [her]."  (Doc. 13-2 at 55.)  Plaintiff reported she asked her primary care provider "to give [her] something for the anxiety and she gave [Plaintiff] hydrocortisone" and referred her back to the psychiatrist.  (*Id.*)  Plaintiff stated the psychiatrist then prescribed Wellbutrin, but it gave her "the jitters" each time she took the medication.  (*Id.*)  In addition, Plaintiff said the medication made her drowsy about thirty minutes after taking it, and she would have to lie down for about three hours to take a nap.  (*Id.* at 56.)  She estimated that each day she spent a total of about seven hours resting or lying down.  (*Id.*)

Plaintiff said her last panic attack was a few months prior to the hearing, and the attacks were "not as bad anymore" because she no longer went out in public. (Doc. 13-2 at 54.) She testified that she could not "be around people" and would "get nervous" around even five or six people. (*Id.*) Plaintiff explained she did not go to the store and would not go to "family functions" or even to the hospital when her granddaughter was born because she "didn't want to have a panic attack in front of [her] family." (*Id.* at 54, 59.) In addition, Plaintiff said she used to go to church but stopped approximately two years before the hearing because she did not like to be around people. (*Id.* at 59.) When asked if she talked with anyone, Plaintiff responded that she talked with her sister, with whom she lived. (*Id.* at 57.) Plaintiff reported she also talked to a friend "maybe twice a month," but had not gotten together with her recently. (*Id.* at 59.)

She testified she also "[felt] depressed a lot," and she did not "even want to get out of bed" three or four days each week. (Doc. 13-2 at 57.) Plaintiff stated there were days she "won't even eat" and other days she would overeat. (*Id.*) She reported she last stayed in bed one day the week before the hearing when she "was just depressed about [her] grandbaby," and she did not shower or bathe that day. (*Id.*) Plaintiff said she turned the television on but just lay there and fell asleep. (*Id.*) She estimated that "about four times a month," she had days "really bad like that," and there was nothing she could do to get out of bed. (*Id.* at 58.) In addition, she stated that "two days maybe out of the week," she would isolate herself in her room, where she would "stare at [the television] without really watching it, and occasionally read. (*Id.*)

Plaintiff reported that she had difficulty with concentration and estimated she could read a magazine article for fifteen, twenty minutes before she would "usually… go to sleep because of the medications." (Doc. 13-2 at 58-59.) She believed the medication made her "zone out," so she could "concentrate a little bit." (*Id.* at 59.)

Finally, Plaintiff said she had pain in her legs "a couple times a month." (Doc. 13-2 at 60.) She reported the pain would come and go and could "happen all day and then… just go away." (*Id.*) Plaintiff testified the pain could be gone "for two or three weeks," and then return as "sharp pains that'll shoot through [her] legs." (*Id.*) Plaintiff reported she would take ibuprofen or Motrin for the pain and anticipated being tested for an autoimmune disease. (*Id.* at 61.)

6

### 3.   Standards for reviewing a claimant's statements

In evaluating a claimant's statements regarding the severity of her symptoms, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if there is no evidence of malingering, the ALJ must make specific findings as to the claimant's credibility by setting forth clear and convincing reasons for rejecting his subjective complaints. *Id.* at 1036.

If there is objective medical evidence of an impairment, an ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because it is unsupported by objective medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991). The Ninth Circuit explained:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

*Smolen v. Chater* 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in *Cotton*, 799 F.2d 1403). Further, an ALJ is directed to identify "specific reasons for the weight given to the individual's symptoms," in a manner such that the claimant "and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling[2] 16-3p, 2017 WL 5180304 (2017); *see also Moisa v. Barnhart,* 367 F.3d 882, 885 (9th Cir. 2004) ("findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony").

An ALJ may consider additional factors to assess a claimant's statements including, for example: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately

---

[2] Social Security Rulings (SSRs) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). The Ninth Circuit gives the Rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

explained, failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of reported by a claimant. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (an ALJ may consider a claimant's reputation for truthfulness, inconsistencies between a claimant's testimony and conduct, and a claimant's daily activities).

### 4.     The ALJ's analysis of Plaintiff's statements

The ALJ summarized Plaintiff's statements in the function report and her testimony at the hearing and determined "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Doc. 13-2 at 30.) However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record..." (*Id.*) In making this finding, the ALJ summarized the medical record related to Plaintiff's COPD and vision impairment and stated:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the evidence does not support the claimant's complaints of a disabling level of illness and instead indicates that the claimant's allegations are not fully consistent. Specifically, the medical evidence shows that the claimant's symptoms were treated conservatively with prescription medication and that the claimant's condition remained stable. Moreover, there is evidence that the claimant has not been entirely compliant with recommendations made by the treating doctor, which suggests that the symptoms may not have been as serious/limiting as the claimant has alleged. Particularly, the record is replete with references that [the] claimant has been advised to stop smoking, but she continued to smoke. While she has cut back, she still smokes 1/2 pack of cigarettes a day. Further, she complains of shortness of breath with exertion and having to use two inhalers and sometimes a nebulizer, yet she still smokes.
>
> I find it noteworthy to mention that counsel highlighted that the claimant was in the ER on O2 in March 2016 and was prescribed prednisone. However, she has not been prescribed prednisone since then. Additionally, counsel also highlighted one global assessment functioning (GAF) score of 50 at Exhibit 8F/13, but it was in June 2018 so very recent and the only time she was assigned that GAF score. Finally, the claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations (Exhibit 5E; 10E; 7F/3). Equally noted, she testified that she could vacuum, although she has to take breaks, she watches television, reads occasionally, talks to her sister during the day, and talks with a friend twice a month.

(*Id.* at 31.)

Plaintiff contends the ALJ erred in addressing her testimony at steps two and four of the analysis. (Doc. 19 at 19-20, 23-27.) According to Plaintiff, "the ALJ simply summarized but failed to

discuss or analyze Ms. McKenzie's testimony regarding her mental limitations … [and] made no reference to any mental symptomology/testimony regarding her 'severe' bipolar disorder and [generalized anxiety disorder]."  (*Id.* at 20, emphasis omitted.)  In addition, Plaintiff argues the ALJ failed to identify clear and convincing reasons for rejecting Plaintiff's statements concerning her physical symptoms.  (*Id.* at 20, 24-27.)  On the other hand, the Commissioner argues that "substantial evidence supports the ALJ discounting Plaintiff's symptom testimony."  (Doc. 21 at 18, emphasis omitted.)  The Commissioner contends the ALJ's findings are supported by objective medical evidence, Plaintiff's daily activities, the treatment received, her failure to stop smoking," and the contrary opinions of uncontradicted medical opinions."  (*Id.* at 22.)

### a.    Statements concerning her mental impairments

Plaintiff asserts that "the ALJ failed to discuss the extensive subjective evidence of …[her] bipolar disorder and [generalized anxiety disorder] and the resulting limitations."  (Doc. 19 at 19, emphasis omitted.)  Plaintiff observes her testimony addressed depression, panic attacks, nervousness around people causing her to not go out in public, side effects from anxiety medication, and "memory and concentration issues."  (*Id.* at 19-21.)  Plaintiff argues, "the ALJ merely summarized [her] testimony in general" and failed to identify any "clear and convincing" reason to reject the evidence related to these subjective limitations.  (*Id.* at 21.)

The Commissioner argues, "the ALJ appropriately noted that Plaintiff's allegations of disabling mental limitations were inconsistent with the opinions of Dr. Martinez and Dr. Funkenstein."  (Doc. 21 at 21, citing AR 24 [Doc. 13-2 at 28].)  The Commissioner observes, "Dr. Martinez and Dr. Funkenstein opined that she did not have any severe mental impairments" and asserts "[t]he ALJ properly found these medical opinions contradicted Plaintiff's claim that her mental impairments caused more than minimal limitation in her ability to perform mental work activities."  (*Id.* at 21-22, citing AR 24, 40-43, 82 [Doc. 13-2 at 28, 44-47, 86].)

Contrary to the Commissioner's assertion, the ALJ did not make a finding that Plaintiff's testimony concerning her mental impairments was inconsistent with medical evidence in the record, or inconsistent with the opinions of Drs. Martinez and Funkenstein.  (*See generally* Doc. 13-2 at 27-32.)  In evaluating Plaintiff's mental impairments at step two of the sequential evaluation—the portion of the

9

opinion cited by the Commissioner—the ALJ only summarized the opinions of Drs. Martinez and Funkenstein and did not address Plaintiff's testimony concerning her mental limitations.  (*See id.* at 27-28.)  Though the ALJ later summarized Plaintiff's statements and testimony from the hearing at step four, the ALJ did not identify any conflicts in the record between Plaintiff's testimony and the opinions of Drs. Martinez and Funkenstein.  (*See id.* at 29-30.)

The Ninth Circuit indicated that "summariz[ing] the medical evidence... is not the sort of explanation or the kind of 'specific reasons' [the Court] must have in order to ... ensure that the claimant's testimony was not arbitrarily discredited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Recently, the Ninth Circuit determined an ALJ erred when discrediting symptom testimony as "not entirely consistent with the medical evidence," without linking the testimony and medical evidence. *Holcomb v. Saul*, 832 Fed. Appx. 505, 507 (9th Cir. Dec. 28, 2020). The Court observed that while the ALJ summarized the claimant's testimony and "determined that his symptom testimony was not 'entirely consistent with the medical evidence and other evidence in the record.'" *Id.* at *2. The Court observed that "the ALJ discussed relevant medical evidence but failed to Holcomb's symptom testimony to specific medical records and explain why those medical records contradicted his symptom testimony." *Id.* Furthermore, the Court observed that "the ALJ never mentioned Holcomb's symptom testimony while discussing the relevant medical evidence." *Id.* Because the Court is constrained to the reviewing reasoning identified by the ALJ for discounting testimony, the Court found the "failure to specific the reasons for discrediting Holcomb's symptom testimony was reversible error." *Id.* (citing *Brown-Hunter*, 806 F.3d at 494)

Likewise, here, the ALJ offered no more than a summary of the medical opinions related to Plaintiff's mental impairments at step two and did not identify the statements from Plaintiff that the ALJ believed conflicted with the opinions from Martinez and Funkenstein.  Because the ALJ failed to link the medical record to Plaintiff's testimony, the Court is unable to cure the error. *See Brown-Hunter*, 806 F. 3d at 494; *Holcomb*, 832 Fed. Appx. at 507; *see also Coloma v. Comm'r of Soc. Sec.*, 2018 WL 5794517 at *9 (E.D. Cal. Nov. 2, 2018) (finding error where "the ALJ simply cites to medical evidence and the general adequacy of Plaintiff's functioning, without any link to how they conflict with, or undermine, Plaintiff's statements").  Thus, the ALJ failed to reject the mental limitations to

which Plaintiff testified—including difficulty being around people, going out in public, and with concentration— in evaluating the severity of her mental impairments.

>  b.  *Plaintiff's activities of daily living*

The ALJ opined "the claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."  (Doc. 13-2 at 31.)  An ALJ is "permitted to consider daily living activities" in addressing a Plaintiff's subjective statements. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  Daily activities "form the basis for an adverse credibility determination" when: (1) the daily activities contradict the claimant's other testimony or (2) the daily activities meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (factors to consider in evaluating a claimant's statements include "whether the claimant engages in daily activities inconsistent with the alleged symptoms" and whether "the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting").

The ALJ observed that Plaintiff "testified she could vacuum, although she has to take breaks, she watches television, reads occasionally, talks to her sister during the day, and talks with a friend twice a month."  (Doc. 13-2 at 31.)  The ALJ did not make any determination that these activities conflict with Plaintiff's testimony.  (*See id.*)  Further, the ALJ did not make any specific findings how or whether these limited activities transfer to a work setting.  Indeed, the Ninth Circuit determined "[d]aily household chores… are not activities that are easily transferable to a work environment." *Blau v. Astrue*, 263 Fed. App'x 635, 637 (9th Cir. 2008).  Likewise, the record does not indicate that Plaintiff could—or did—perform any of the activities identified for a substantial part of each day. Thus, the activities identified by the ALJ do not support the adverse credibility decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (limited activities did not constitute convincing evidence that the claimant could function regularly in a work setting).

>  c.  *Treatment received*

When evaluating a claimant's subjective statements, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. §§ 404.1529(c), 416.929(c).  The treatment a claimant received, especially when conservative, is a legitimate consideration in a

credibility finding. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").

Importantly, "the fact that treatment may be routine or conservative is not a basis for finding subjective symptom testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ believes are available." *Block v. Berryhill*, 2018 WL 1567814 at *5 (E.D. Cal. Mar. 31, 2018), quoting *Moon v. Colvin*, 139 F. Supp. 3d 1211, 1220 (D. Or. 2015)). Thus, an ALJ errs in rejecting subjective complaints on these grounds where he fails "failed to explain why [the treatment] is routine or conservative or what more aggressive treatment was available and appropriate for Plaintiff." *Candice C. v. Saul*, 2019 WL 5865610 at *4 (C.D. Cal. Nov. 8, 2019).

The ALJ found "the medical evidence shows that the claimant's symptoms were treated conservatively with prescription medication and that the claimant's condition remained stable." (Doc. 13-2 at 31.) However, it is unclear which symptoms the ALJ believed were treated with conservative care or which condition the ALJ believed was stable. The ALJ also did not identify any medical evidence to support the conclusion that Plaintiff received only conservative treatment, or that her conditions were stable. Consequently, the ALJ erred in addressing Plaintiff's treatment in relation to her subjective statements. *See Candice C.*, 2019 WL 5865610 at *4.

Moreover, as Plaintiff observes, she received prescriptions for Xanax, Latuda, Zoloft, and Hydroxyzine. (Doc. 19 at 19, citing AR 488-489, 493, 496, 514, 521-523, 548, 564, 601 [Doc. 492-493, 497, 500, 518, 525-527, 552, 568, 605].) This Court and others have explained such medications are not properly characterized as "conservative treatment." *See, e.g., Rice v. Colvin,* 2017 WL 85815, at *5 (E.D. Cal. Jan. 10, 2017) (observing that the claimant's treatment included medications such as Xanax, Celexa, and Prozac, and finding it "entirely unclear… how treatment with such medications could be characterized as conservative); *Faber v. Berryhill*, 2017 WL 6761936 at *10 (S.D. Cal. Dec. 29, 2017) (finding the ALJ did not properly characterize medication as "conservative treatment" where the claimant's prescriptions included antipsychotics and anxiety medications, including Hydroxyzine, and the treatment was not a clear and convincing reason for rejecting the claimant's subjective symptoms); *Garcia v. Colvin*, 2015 WL 4450901, at *3 (C.D. Cal. July 20, 2015) ("The ALJ erred in finding Plaintiff's treatment conservative because . . . Xanax prescriptions are not considered

12

1   conservative treatment").  Thus, the ALJ erred in describing Plaintiff's prescribed treatment as

2   conservative.

3          Finally, to the extent the ALJ believed Plaintiff received conservative care for her physical

4   impairments, the ALJ did not identify any additional treatment that she believed was available.

5   Without further findings, the ALJ erred in rejecting Plaintiff's subjective statements on these grounds.

6   *See Candice C.*, 2019 WL 5865610 at *4; *Calleres v. Comm'r of Soc. Sec.*, 2020 WL 4042904 at *5

7   (E.D. Cal. July 17, 2020) (concluding a claimant's conservative treatment was not a clear and

8   convincing reason for discounting testimony where the ALJ did not identify any additional "treatment

9   that is available for such impairments...that the [claimant] did not use").

10                 *d.      Failure to stop smoking*

11          The Regulations caution claimants that "[i]n order to get benefits, you must follow treatment

12   prescribed by your medical source(s) if this treatment can restore your ability to work." 20 C.F.R. §§

13   404.1530(a), 416.930(a). If a claimant fails to follow the prescribed treatment without an acceptable

14   reason, the Commissioner "will not find [the claimant] disabled."  20 C.F.R. §§ 404.1530(b),

15   416.930(b). Accordingly, the Ninth Circuit determined "an unexplained, or inadequately explained,

16   failure to … follow a prescribed course of treatment … can cast doubt on the sincerity of the claimant's

17   pain testimony."  *Fair*, 885 F.2d at 603.  Therefore, noncompliance with a prescribed course of

18   treatment is clear and convincing reason for finding a plaintiff's subjective complaints lack credibility.

19   *Id.*; *see also Bunnell*, 947 F.2d at 346.

20          In evaluating Plaintiff's statements concerning the severity of her symptoms, the ALJ

21   determined Plaintiff failed to be "entirely compliant" with recommendations from her doctor, who

22   "advised [Plaintiff] to stop smoking."  (Doc. 13-2 at 31.)  The ALJ observed: "While she has cut back,

23   she still smokes 1/2 pack of cigarettes a day. Further, she complains of shortness of breath with exertion

24   and having to use two inhalers and sometimes a nebulizer, yet she still smokes."  (*Id.*)  The ALJ opined

25   Plaintiff's failure to stop smoking "suggests that the symptoms may not have been as serious/limiting as

26   the claimant has alleged."  (*Id.*)

27          Plaintiff argues the ALJ erred in considering her failure to stop smoking as part of the

28   evaluation of her subjective complaints.  (Doc. 19 at 25.)  Plaintiff observes the Seventh Circuit

1    criticized the discrediting of a claimant based upon a failure to quit smoking, stating:

2           [E]ven if medical evidence had established a link between smoking and her
            symptoms, it is extremely tenuous to infer from the failure to give up smoking that
3           the claimant is incredible when she testifies that the condition is serious or painful.
            Given the addictive nature of smoking, the failure to quit is as likely attributable to
4           factors unrelated to the effect of smoking on a person's health. One does not need to
            look far to see persons with emphysema or lung cancer—directly caused by
5           smoking—who continue to smoke, not because they do not suffer gravely from the
            disease, but because other factors such as the addictive nature of the product
6           impacts their ability to stop. This is an unreliable basis on which to rest a credibility
            determination.

7

8    (*Id.* at 27, quoting *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000).)  Plaintiff notes there is

9    evidence in the record that she attempted compliance, including periods in which she quit:

10          In April 2015, Ms. McKenzie reported that she started to quit smoking about six
            months ago but restarted in February, currently smoking about half a pack a day (AR
11          459). In May 2015 Ms. McKenzie noted she has cut down on smoking from 1 pack of
            cigarettes a day to 8 cigarettes a day. (AR 428). In June 2015, Ms. McKenzie reported
12          she cut down smoking from 4-5 cigarettes a day. (AR 426). In September 2015, Ms.
            McKenzie reported she quit smoking one month prior to the visit. (AR 474). At the
13          hearing in December 2018, Ms. McKenzie admitted that that she had cut down smoking
            from a pack and a half a day to 1/2 a pack a day. (AR 45).

14

15   (Doc. 19 at 25.)  Plaintiff contends the fact she failed quit smoking "is not necessarily indicative of any

16   incredibility of her allegations" and there is no showing that she made "willful or inconsistent

17   statements, admitting to her attempts, successes and failures, attempting to quit smoking."  (*Id.* at 26.)

18          On the other hand, the Commissioner contends the ALJ reasonably considered her failure to quit

19   smoking as failure to follow a prescribed course of treatment.  (Doc. 21 at 21.)  The Commissioner

20   notes that while Plaintiff characterizes her doctor's instructions as directing her "cut back on her

21   smoking," the recommendation was actually that Plaintiff "stop smoking."  (*Id.*, citing AR 427, 429,

22   451 [Doc. 13-2 at 431, 433, 455].)  The Commissioner asserts: "Given the well-accepted connection

23   between respiratory issues, such as COPD, and smoking, and her doctors' advisement to stop smoking,

24   Plaintiff should not be allowed to refuse to engage in treatment, yet claim disability for that very

25   reason."  (*Id.*)

26          Notably, the Ninth Circuit declined to find an ALJ erred in considering a claimant's failure to

27   stop smoking in evaluating the claimant's subjective complaints.  *See, e.g., Bray v. Comm'r of Soc. Sec.*

28   *Admin.,* 554 F.3d 1219, 1227 (9th Cir. 2009); *Finley v. Barnart*, 57 Fed. App'x 326, 327 (9th Cir.

2003). In *Bray*, the ALJ noted the claimant "continued to smoke cigarettes up until one month before her hearing, despite complaining of debilitating shortness of breath and acute chemical sensitivity." *Id*., 554 F.3d at 1227. "The ALJ reasoned that if Bray's respiratory ailments were as severe as she claimed, she would likely refrain from smoking." *Id*. The claimant argued the ALJ erred by considering her failure to quit smoking as part of the credibility determination. *Id*., 554 F.3d at 1227. The Ninth Circuit observed, "It is certainly possible that Bray was so addicted to cigarettes that she continued smoking even in the face of debilitating shortness of breath and acute chemical sensitivity." *Id*. The Court declined to determine whether the ALJ erred in considering the failure to quit smoking because "the ALJ presented four other independent bases for discounting Bray's testimony, and each finds ample support in the record," explaining "the ALJ's reliance on Bray's continued smoking, even if erroneous, amounts to harmless error." *Id*.  However, the Court also concluded the plaintiff's failure to quit smoking until shortly before her hearing date "belie[d] Bray's claim of debilitating respiratory illness." *Id*. Similarly, here, Plaintiff's failure to quit smoking despite being told do so by physicians undermines the credibility of her complaints of debilitating COPD.

District courts throughout the Ninth Circuit determined that smoking against medical advice—particularly where a condition is aggravated by smoking—undermines the credibility of a claimant's subjective complaints. *See, e.g., Bybee v. Astrue*, 2011 WL 6703568 at *8 (E.D. Cal. Dec. 21, 2011) ("[s]moking despite medical advice to quit is relevant to the credibility analysis, as is evidence of successfully quitting smoking for significant periods"); *Broughton v. Astrue*, 2012 WL 1616891 at *2 (C.D. Cal. May 8, 2012) ("plaintiff's failure… to comply with the advice to stop smoking arguably also constituted a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination"); *see also Wagnon v. Colvin*, 2016 WL 356079 at *3 (D. Or. Jan. 28, 2016) (finding the ALJ properly determined the "plaintiff's non-compliance with medical advice to discontinue drinking alcohol and smoking tobacco undermined the credibility of his subjective complaints" where the plaintiff "acknowledged that he continued to smoke contrary to medical advice and despite his history of cardiovascular problems").

The medical record indicates that Plaintiff had a history of smoking tobacco for more than 35 years.  (*See* Doc. 13-2 at 483.)  As the ALJ observed, Plaintiff was "advised to stop smoking" by

various treatment providers. (Doc. 13-2 at 32.)  For example, at a pulmonary appointment in June 2015, Plaintiff and her physician had a discussion regarding "cessation of smoking." (*Id.* at 431.)  Emergency room records from the same month indicate the treatment providers discussed Plaintiff's COPD with her and indicated "she should give serious thought to stop smoking, since she is only smoking 3 cigarettes a day." (*Id.* at 445.)  The ALJ reasoned Plaintiff's failure to stop smoking "suggests that the symptoms may not have been as serious/limiting as the claimant has alleged." (*Id.* at 31.)  Importantly, the record does not reveal Plaintiff had a lack of candor regarding her failure to stop smoking. However, because Plaintiff has not explained her failure to comply with the instruction to quit smoking, this factor offers limited support to the ALJ's rejection of Plaintiff's statements concerning the severity of her physical impairments.  *See Bray,* 554 F.3d at 1227.

### e.    Conflict with medical evidence

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  While a claimant's "testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis").

Importantly, if an ALJ cites the medical evidence to support an adverse credibility determination, it is not sufficient for the ALJ to simply state that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (the ALJ has a burden to "identify what testimony is not credible and what evidence undermines the claimant's complaints"); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify "what evidence suggests the complaints are not credible").

The Ninth Circuit explained that "summariz[ing] the medical evidence supporting [the] RFC determination ... is not the sort of explanation or the kind of 'specific reasons' [the Court] must have in order to ... ensure that the claimant's testimony was not arbitrarily discredited." *See, e.g., Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). As a result, "the observations an ALJ makes as part of the summary of the medical record are not sufficient to establish clear and convincing reasons for rejecting a Plaintiff's credibility." *Argueta v. Colvin*, 2016 WL 4138577 at *13 (E.D. Cal. Aug. 3, 2016). For example, in *Brown-Hunter*, the claimant argued the ALJ failed to provide clear and convincing reasons for rejecting her symptom testimony. *Id*., 806 F. 3d at 491. The district court identified inconsistencies in the ALJ's summary of the medical record that it gave rise to reasonable inferences about Plaintiff's credibility. *Id*. On appeal, the Ninth Circuit determined the ALJ failed to identify the testimony she found not credible and did not link that testimony to support the adverse credibility determination. *Id*. at 493. The Court explained that even if the district court's analysis was sound, the analysis could not cure the ALJ's failure. *Id*. at 494. Likewise, here, the ALJ offered little more than a summary of the medical evidence to support her rejection Plaintiff's subjective statements.

The ALJ observed that Plaintiff reported having COPD and a vision impairment, and opined: "[T]he weight of the objective evidence does not support the claimants claims of disabling limitations to the degree. Specifically, progress notes consistently document claimant's COPD is stable on medication and she tolerates medication without complaints of untoward side effects." (Doc. 13-2 at 30, citing Exh. B9F-12F [Doc. 13-2 at 576- 647].) In citing broadly to more than seventy pages of medical records in Exhibits 9F through 12F, the ALJ failed to carry the burden to identify specific conflicts between Plaintiff's subjective statements and the record and to resolve the conflict. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). This failure to identify specific evidence among the exhibits is an error, as the Ninth Circuit indicated courts will not "comb the administrative record to find specific conflicts." *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014); *see also Verduzco v. Colvin*, 2019 WL 384960 at *6 (N.D. Cal. Aug. 14, 2015) (explaining the court "cannot meaningfully review the ALJ's determination" where the ALJ cited generally to several exhibits, "which comprise[d] more than 120 pages of medical records"); *Wilson v. Berryhill*, 2019 WL 384960 at *7 n. 11 (S.D. Al. Jan. 30, 2019) (finding a "summary citation to two exhibits, collectively consisting

of over seventy pages of medical records, is insufficient, as the Court is unable to determine what inconsistencies the ALJ relied on").

Although the ALJ proceeded to summarize the records related to Plaintiff's COPD and vision impairments in chronological order (Doc. 12-2 at 30-31), the ALJ has not linked her summary review of the record to Plaintiff's subjective statements concerning her limitations. For example, the ALJ fails to identify evidence conflicting with Plaintiff's testimony that exertion causes shortness of breath that requires her to use an inhaler and take a break. Thus, the ALJ's summary of the medical record does not support the decision to reject Plaintiff's subjective statements. *See Brown-Hunter*, 806 F.3d at 494; *see also Coloma v. Comm'r of Soc. Sec*., 2018 WL 5794517 at *9 (E.D. Cal. Nov. 2, 2018) (finding error where "the ALJ simply cite[d] to medical evidence and the general adequacy of Plaintiff's functioning, without any link to how they conflict with, or undermine, Plaintiff's statements").

### 5. Conclusion

For the reasons set forth above, the ALJ failed to set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds" that are supported by substantial evidence in the record. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas*, 278 F.3d at 958.

## B.    Third Party, Lay Witness Statements

Rebecca Stacey, Plaintiff's sister with whom she lived, completed a third-party function report on June 2015. (Doc. 13-2 at 290-297.) Ms. Stacey reported Plaintiff had COPD, breathing problems, and social anxiety. (*Id*. at 290.) According to Ms. Stacey, Plaintiff attended church on Sundays at the time, but had "no interest in going places." (*Id*. at 291, 294.) She noted Plaintiff suffered from depression, was anti-social, and had panic attacks. (*Id*. at 294.) Ms. Stacey explained Plaintiff isolated herself and would not go to "public places for a long period time because of anxiety." (*Id*. at 296.) She reported Plaintiff only socialized with people "with whom she lives." (*Id*. at 294.) In addition, she noted Plaintiff did "not handle stress at all." (*Id*. at 296.) She believed Plaintiff did not have any problems with personal care and was able to prepare meals that were simple, take out, or frozen. (*Id*. at 291-292.) Ms. Stacey reported Plaintiff performed limited household chores, including making her bed and doing laundry. (*Id*. at 292.)

1        Patty Brown, Plaintiff's aunt, also completed a third-party function report in August 2016.

2   (Doc. 13-2 at 327-334.)  Ms. Brown reported she saw Plaintiff "once or twice a week."  (*Id.* at 327.)

3   She stated Plaintiff had anxiety attacks and did not "like to be around a lot of people."  (*Id.* at 331.)

4   According to Ms. Brown, Plaintiff would "start to panic" if around a crowd of people.  (*Id.* at 332.)  In

5   addition, Ms. Brown believed Plaintiff had difficulty with concentration, which she attributed to the

6   medication Plaintiff took.  (*Id.*)  Ms. Brown indicated Plaintiff also did not handle stress or changes in

7   routine well.  (*Id.* at 333.)

8        Plaintiff argues the ALJ committed "harmful error" by failing to discuss the third-party witness

9   statements from Ms. Stacey and Ms. Brown.  (Doc. 19 at 27-28.)  Plaintiff observes that "[b]oth the

10  SSA regulations and Ninth Circuit case law establishes that third-party evidence must be considered by

11  the ALJ in making a determination."  (*Id.* at 28.)  "The Commissioner acknowledges that the ALJ did

12  not discuss the function report from Plaintiff's relatives specifically in the decision, but contends any

13  such error was harmless."  (Doc. 21 at 22.)  According to the Commissioner, "[b]ecause the ALJ

14  properly discounted Plaintiff's testimony, the same reasoning should apply to the testimony from her

15  relatives."  (*Id.* at 23, citing *Ash v. Berryhill*, 676 Fed. App'x. 632, 633 (9th Cir. 2017) ["the ALJ erred

16  in failing to address the lay witness's statement, but this error was harmless because the witness did not

17  describe any limitations beyond those that [the claimant] described herself"].)  However, as discussed

18  above, the ALJ did not properly evaluate Plaintiff's subjective statements.

19       Importantly, an ALJ must consider statements from "nonmedical sources" —such as relatives—

20  in evaluating the severity of a claimant's symptoms.  20 C.F.R. § 404.1513(a)(4); *Merrill v. Apfel*, 224

21  F.3d 1083, 1085 (9th Cir. 2000) ("an ALJ, in determining a claimant's disability, must give full

22  consideration to the testimony of friends and family members"); *see also Stout v. Comm'r,* 454 F.3d

23  1050, 1053 (9th Cir. 2006) ("an ALJ must consider lay witness testimony").  To discount the testimony

24  of a lay witness, the ALJ must give specific, germane reasons for rejecting the opinion of each witness.

25  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir.

26  2009).  For example, an ALJ can reject lay witness testimony to the extent that it conflicts with other

27  testimony, the record of the claimant's activity, and the medical evidence. *Bayliss v. Barnhart*, 427 F.3d

28  1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

19

By failing to address the function reports from Ms. Stacey and Ms. Brown, the ALJ offered no insight regarding the rejection of this evidence. The Court cannot review evidentiary findings that the ALJ failed to make, and a complete failure to address such evidence cannot be considered a harmless error. *Stout*, 454 F.3d at 1056.  As explained by the Ninth Circuit, "Lay witness testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she *expressly determines* to disregard such testimony..."  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (emphasis added); *see also Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) ("lay witness testimony… cannot be disregarded without comment").  Consequently, the ALJ's failure to discuss and properly reject the lay statements is not harmless error.

## C.    Step Two Findings

Plaintiff contends the ALJ erred in evaluating her mental impairments at step two of the sequential evaluation.  (Doc. 19 at 14-21.)  The inquiry at step two is a *de minimus* screening for severe impairments "to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54, (1987)). The purpose is to identify claimants whose medical impairment makes it unlikely they would be disabled even if age, education, and experience are considered. *Bowen*, 482 U.S. at 153.  At step two, a claimant has the burden to make a "threshold showing" (1) she has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe.  *Id.* at 146-47; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c).

An impairment, or combination thereof, is "not severe" if the evidence establishes the impairment has "no more than a minimal effect on an individual's ability to do work."  *Smolen*, 80 F.3d at 1290.  For an impairment to be "severe," it must "significantly limit[]" the claimant's "ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities are "the abilities and aptitudes necessary to do most jobs."  *Id.*, §§ 404.1522(b), 416.922(b).  These activities include "[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment;" "[r]esponding appropriately to supervision, co-workers and usual work situations;" and "[d]ealing with changes in a routine work setting."  *Id.*

///

20

1        1.       ALJ's findings

2        The ALJ stated at step two, "The claimant has the following severe impairments: chronic

3  obstructive pulmonary disease (COPD), vision impairment, generalized anxiety disorder, and bipolar

4  disorder."  (Doc. 13-2 at 27.)  The ALJ indicated these "medically determinable impairments

5  significantly limit the ability to perform basic work activities as required by SSR 85-28."  (*Id.*)

6  However, after the ALJ summarized the opinions from Drs. Martinez and Funkenstein, she also opined

7  Plaintiff's "medically determinable mental impairment of generalized anxiety disorder and bipolar

8  disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental

9  work activities and is therefore nonsevere."  (*Id.* at 28.)  Further, the ALJ stated:

> In making this finding, I have considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix I). These four areas of mental functioning are known as the "paragraph B" criteria.
>
> Based on the overall evidence, the treatment records, and the medical expert testimony, I find the claimant's mental impairments caused mild limitations in understanding, remembering, or applying information, mild limitations in interacting with others, mild limitations in concentrating, persisting, or maintaining pace, and mild limitations in adapting or managing oneself.
>
> Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas, it is nonsevere (20 CFR 416.920a(d)(l)).

18  (*Id.*)  The ALJ indicated the residual functional capacity she identified "reflect[ed] the dree of

19  limitation … found in the 'paragraph B' mental function analysis."  (*Id.*)

20        2.       Inconsistent statements by the ALJ

21        Plaintiff observes there is an "internal inconsistency" at step two in the ALJ's findings

22  regarding her mental impairments, between (1) the determination that Plaintiff's generalized anxiety

23  disorder and bipolar disorder were severe impairments and (2) the "subsequent determination, only a

24  paragraph later," that these impairments were "nonsevere."  (Doc. 19 at 15.)  Plaintiff contends this is

25  "a glaring and harmfully erroneous internal inconsistency."  (*Id.*)  Plaintiff notes that "[a] recent a

26  district court case in this circuit determined an ALJ committed harmful legal error given a very similar

27  set of facts."  (*Id.* at 17, citing *Reeves v. Saul*, 2020 WL 1557776 at *13 (D. Nev. Mar. 6, 2020).)

28        As Plaintiff observes, in *Reeves,* the district court found "[t]he ALJ's opinion that Plaintiff's

depressive disorder is severe is internally inconsistent with the ALJ's statement that Plaintiff's mental impairments cause no more than mild limitation." *Id.*, 2020 WL 1557776 at *13.  The court also noted the ALJ erred by "never mentioning" Reeve's subjective reports related to the severity of his impairment or "the consistent diagnosis that [Reeves] was severely depressed." *Id.*  The district court concluded the "internal inconsistency in [the] decision coupled with the ALJ's with the ALJ's failure to illuminate the basis for finding Plaintiff's 'subjective complaints ... not consistent with the entirety of the medical record' warrant[ed] remand." *Reeves*, 2020 WL 1557776 at *13, *recommendation adopted* 2020 WL 1549623 (D. Nev. Mar. 31, 2020).

On the other hand, the Commissioner argues "Plaintiff's reliance on *Reeves v. Saul* … is misplaced because the ALJ included generalized anxiety disorder and bipolar disorder as severe impairments by mistake." (Doc. 21 at 11, n.3.)  The Commissioner asserts it was a "typographical error," because "the ALJ did not intend to include generalized anxiety disorder and bipolar disorder as severe impairments at step two." (*Id.* at 11.)  According to the Commissioner, "This typographical error is evidenced by the ALJ's discussion of how Plaintiff's mental impairments only caused mild limitation in categories of mental functioning such as: understanding, remembering or applying information; interacting with others; concentrating persisting or maintaining pace; and adapting or managing oneself." (*Id.*, citing AR 24 [Doc. 13-2 at 28].)  The Commissioner notes the Ninth Circuit determined typographical errors by ALJs are harmless. (*Id.*, citing, e.*g., Lewis v. Berryhill*, 722 Fed. App'x 660, 661 (9th Cir. 2018); *Lemke v. Comm'r of Soc. Sec.*, 380 Fed. App'x. 599, 601 (9th Cir. 2010); *Morales v. Astrue*, 300 Fed. App'x. 457, 458 (9th Cir. 2008).)  Thus, the Commissioner contends the ALJ's step two "typographical error amounts to harmless error." (*Id.* at 11.)

Notably, courts have excused inconsistent statements by ALJs "as mere scrivener's errors" if the intent of the ALJ is apparent from the record. *Hudon v. Astrue,* 2011 WL 4382145, at *4 (D.N.H. Sept. 20, 2011); *see also Moore v. Astrue*, 2008 WL 216605, at *4-5 (D.S.C. Jan. 24, 2008) (reviewing the decision and finding the ALJ merely made a "drafting error"); *Lamont v. Berryhill,* 2017 WL 3432695, at *2 (W.D. Wash. June 28, 2017) ("the ALJ appeared to make a scrivener's error in finding asthma to be non-severe. . . . In the heading to his step-two discussion, the ALJ did list asthma among the impairments he found severe"); *Conner v. Colvin*, 2014 WL 2094345, at *4 (E.D. Wash. May 20,

2014) (finding the ALJ made "an unintentional oversight" with inconsistent step two findings because the record was clear as to the ALJ's finding that an impairment was not severe); *Johnson v. Astrue*, 2011 WL 3881486, at *3 (W.D. Wash. July 29, 2011) (remanding the decision for the ALJ "to clarify the step two finding regarding plaintiff's mental impairments" where the intent could not be determined because ALJ identified ADD as a severe impairment and made "a seemingly contrary finding later in the decision").

For example, in *Moore*, the ALJ made inconsistent statements in his findings of fact and the analysis concerning the claimant's depression. *Id.*, 2008 WL 216605, at *4-5. The ALJ indicated in "his findings of fact and conclusions of law that 'the claimant has the following severe impairments: arthritis and history of depression.'" *Id.* at *4. The court observed this language was "contradictory on its face" with the ALJ's conclusion "in the body of his decision… that Plaintiff's depression was a *non-severe* impairment." *Id.* (emphasis in original). The court noted the ALJ discussed the medical evidence related to Plaintiff's depression and "made a specific finding that that impairment was non-severe and resulted in no more than mild restrictions of activities of daily living; no difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation (each of extended duration)." *Id.* With these findings, the court determined "it is abundantly clear what the ALJ's decision was," and rejected the assertion that the decision should be remanded due to the inconsistent findings. *Id.* at *5.

Similarly, here, the ALJ indicated in her findings of fact that Plaintiff's "severe impairments [included]… generalized anxiety disorder, and bipolar disorder." (Doc. 13-2 at 27.) As Plaintiff asserts, this is inconsistent with the later conclusion that Plaintiff's "medically determinable mental impairment … is non severe." (*Id.* at 28.) However, the ALJ also indicates her reliance upon the medical opinions from Dr. Martinez, who "opined that the claimant's mental impairments are nonsevere." (*Id.*) The ALJ also adopted the conclusions of Dr. Martinez that Plaintiff had "mild limitations in understanding, remembering, or applying information[;] mild limitations in interacting with others[;] mild limitations in concentrating, persisting, or maintaining pace[;] and mild limitations in adapting or managing oneself." (*Id.*) Further, the ALJ indicated "[t]he claimant's medically determinable impairment of generalized anxiety disorder and bipolar disorder does not cause more than

1   minimal limitation in the claimant's ability to perform basic mental work activities and is therefore

2   nonsevere."  (*Id.*)  With this discussion, it is clear the ALJ believed Plaintiff's mental impairments were

3   not severe, despite the heading leading into the discussion.  *See Moore*, 2008 WL 216605 at *4-5.

4           3.      Failure to consider probative evidence

5           Although the Court is able to ascertain the ALJ's conclusion that Plaintiff's mental impairments

6   were "nonsevere," the ALJ failed to consider Plaintiff's subjective statements concerning her mental

7   impairments and lay witness statements in making this finding, as discussed above. Significantly, an

8   ALJ "may not reject 'significant probative evidence' without explanation."  *Flores v. Shalala*, 49 F.3d

9   562, 570-71 (9th Cir. 1995) (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)). An ALJ

10  may not selectively review the evidence to support her decision. *Holohan v. Massanari*, 246 F.3d 1195,

11  1204-05 (9th Cir. 2001); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (the ALJ

12  may not "pick and choose ... using portions of evidence favorable to [her] position while ignoring other

13  evidence").  Consequently, the ALJ erred in her review of the evidence related to the severity of

14  Plaintiff's mental impairments.

15  **D.     ALJ's Findings at Step Three**

16          The Listings set forth by the Commissioner "define impairments that would prevent an adult,

17  regardless of his age, education, or work experience, from performing any gainful activity, not just

18  'substantial gainful activity.'"  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citation omitted, emphasis

19  in original).  At step three of the sequential evaluation, the claimant bears the burden of demonstrating

20  his impairments equal a listed impairment.  *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n. 5 (1987); 20

21  C.F.R. §§ 404.1520(d), 416.920(d).  "If the impairment meets or equals one of the listed impairments,

22  the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively

23  presumed to be disabling, the evaluation proceeds to the fourth step."  *Id.*, 482 U.S. at 141; *Tackett v.*

24  *Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

25          Based upon a presumption that the ALJ found her mental impairments were severe, Plaintiff

26  argues the ALJ erred by not evaluating the Listings related to mental impairments at step three.  (Doc.

27  19 at 16.)  However, as discussed above, the ALJ determined that Plaintiff's mental impairments were

28  not severe.  Moreover, Plaintiff does not argue that either her generalized anxiety disorder or bipolar

1   disorder satisfies a Listing.  (*See generally* Doc. 19 at 16-17.)  Therefore, Plaintiff fails to identify a

2   reversible error based solely upon the ALJ's step three analysis.  *See Yuckert*, 482 U.S. at 146, n. 5; *see*

3   *also Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (finding the ALJ's listing analysis was not

4   erroneous where the claimant "offered no theory, plausible or otherwise, as to how his [impairments]

5   combined to equal a listed impairment").

6   **E.      Plaintiff's Residual Functional Capacity**

7          A claimant's residual functional capacity is "the most [a claimant] can still do despite [her]

8   limitations."  20 C.F.R. §§ 404.1545(a), 416.945(a); see also 20 C.F.R. Part 404, Subpart P, Appendix

9   2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity

10  for sustained performance of the physical-mental requirements of jobs").  In formulating an RFC, the

11  ALJ weighs medical and other source opinions, as well as the claimant's subjective statements.  *See,*

12  *e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).  Further, the ALJ must

13  consider "all of [a claimant's] medically determinable impairments," whether severe or not, when

14  assessing an RFC.  20 C.F.R. §§ 405.1545(a)(2), 416.945(a)(2).

15         Plaintiff contends the RFC identified by the ALJ "does not reflect substantial evidence of

16  record."  (Doc. 19 at 21, *see also id.* at 21-27.)  As discussed above, the ALJ erred in her analysis of the

17  evidence related to Plaintiff's mental and physical impairments, including Plaintiff's testimony and the

18  medical record, which impacted the determination of the RFC.  *See Robbins v. Social Sec. Admin.,* 466

19  F.3d 880, 883 (9th Cir. 2006) ("In determining a claimant's RFC, an ALJ must consider all relevant

20  evidence in the record including, inter alia, medical records, lay evidence, and the effects of symptoms,

21  including pain…").  Therefore, the Court is unable to find the RFC determination was proper.

22  **F.      Remand is Appropriate**

23         The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to

24  order immediate payment of benefits is within the discretion of the district court.  *Harman v. Apfel*,

25  211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an administrative

26  agency determination, the proper course is to remand to the agency for additional investigation or

27  explanation.  *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S.

28  12, 16 (2002)).  Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v*, 80 F.3d at 1292.  In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed.  *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The matter may be remanded further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony.  *See, e.g., Bunnell*, 947 F.2d at 348; *see also Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether the plaintiff's testimony should be credited as true).  The ALJ also erred in evaluating the statements of lay witnesses and failed to consider probative evidence in the record.  Thus, remand is appropriate for the ALJ to re-evaluate the evidence and set forth findings supported by substantial evidence.

## **CONCLUSION AND ORDER**

For the reasons set for above, the Court finds the ALJ erred in evaluating the record, and the ALJ's decision cannot be upheld.  *See Sanchez*, 812 F.2d at 510.  Accordingly, the Court **ORDERS**:

1.   Plaintiff's request for review of the ALJ's decision (Doc. 19) is **GRANTED**.

2.   The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

3.   The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Pamela McKenzie and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **September 20, 2021**                              **/s/ Jennifer L. Thurston**
                                                              CHIEF UNITED STATES MAGISTRATE JUDGE